THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANTHONY PECK <br> 4807 N Sedgewick Rd <br> Lyndhurst, OH 44124 <br><br> Plaintiff, <br><br> v. <br><br> CLEVELAND-CLIFFS <br> CLEVELAND WORKS LLC <br> c/o Statutory Agent: <br> CT CORPORATION SYSTEM <br> 4400 Easton Commons Way, Suite 125 <br> Columbus, Ohio 43219 <br><br> Defendant. | Case No. <br><br> JUDGE <br><br> MAGISTRATE JUDGE <br><br> **JURY DEMAND ENDORSED HEREON** |

## COMPLAINT

Plaintiff Anthony Peck ("Plaintiff"), for his Complaint against Defendant Cleveland-Cliffs Cleveland Works LLC ("Defendant"), hereby states as follows:

## PARTIES

1. Plaintiff is a natural person residing Cuyahoga County, Ohio.

2. Defendant is an Ohio Limited Liability Company registered to do business in the Northern District of Ohio.

3. Plaintiff is an "employee" as defined in Chapter 4112 of the Ohio Revised Code and Title VII of the Civil Rights Act of 1964.

4. Defendant is an "employer" as defined in Chapter 4112 of the Ohio Revised Code and Title VII of the Civil Rights Act of 1964.

1

## JURISDICTION AND VENUE

5. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, the Ohio Laws Against Discrimination, and R.C. Chapter 4112 ("Chapter 4112"). This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

6. Venue is proper in this forum pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendant in the Northern District of Ohio, Plaintiff performed his job duties there, and Defendant is doing and has done substantial business in the Northern District of Ohio.

7. This Complaint is being timely filed within 90 days of Plaintiff's receipt of Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission.

## FACTS

8. Plaintiff was hired by Defendant in or around July of 2017.

9. Defendant is a steel manufacturer that produces hot-rolled, cold-rolled, and hot-dipped galvanized sheet and semi-finished steel products in Cleveland, Ohio.

10. In his first year of employment, Plaintiff's job included performing duties as a utility technician and crane operator.

11. Plaintiff's employment is devoid of any disciplinary action or negative performance evaluations.

12. Plaintiff is an African American who has been subjected to racial discrimination in the workplace.

13. Defendant's workforce is comprised mainly of Caucasian employees.

14. African Americans account for approximately 15% of Defendant's total workforce, and approximately 7% of Defendant's management.

15. In or around March of 2019, Plaintiff began experiencing various forms of race discrimination.

16. Specifically, Plaintiff found racist cartoon drawings that depicted him in a racially derogatory manner.

17. Caucasian employees would also place names on their hard hats that are associated with African Americans and would refer to each other by their "African" name, while mocking the speech of a black individual.

18. Plaintiff and other African American employees reported the racially discriminatory treatment.

19. Defendant claimed to lack any proof of the discriminatory treatment, even though it failed to interview all the complaining parties.

20. Plaintiff and other African American employees observed racially insensitive name calling and comments, such as "Whites are superior to other races."

21. After reporting the race discrimination, Plaintiff began experiencing various forms of retaliation through management and fellow colleagues.

22. Reports are regularly created and provided from one shift to the next, to facilitate transition and continuity among the shift changes.

23. However, after reporting the race discrimination, Defendants employees began providing the shift reports to everyone except for Plaintiff, disrupting his ability to perform his duties.

24. There were also occasions where Plaintiff's department, which mostly consists of Caucasian employees, held potlucks to which Plaintiff was not invited.

25. At one point, Plaintiff applied for and was awarded a bid to serve as a "Grade 2" crane operator. However, that award was quickly revoked after Plaintiff reported discrimination and file a charge of discrimination with the Ohio Civil Rights Commission.

26. Mr. Almiroudis used the word "nigger" freely around his employees.

27. Plaintiff also reported instances of race discrimination to Mr. Almiroudis on several occasions. Plaintiff is African American and making these reports to Mr. Almiroudis was very uncomfortable for her.

28. The Ohio Civil Rights Commission ("OCRC") conducted an investigation into Plaintiff's complaint of race discrimination, harassment, and hostile work environment. After concluding its investigation, the OCRC determined that it was **probable** that Defendant engaged in unlawful discriminatory practices in violation of the Ohio Revised Code.

29. Plaintiff remains employed with Defendant and continues to experience retaliation from his reports of discrimination in the form of harassment and verbal threats from colleagues.

30. On one occasion, one of Defendant's employees was seemingly intoxicated while operating a crane, and dropped several hundred tons of steel near Plaintiff, nearly killing him instantly.

31. Plaintiff again reported this incident, and experienced retaliation from other colleagues who were friends with the crane operator.

32. Plaintiff's work environment has become riddled with hostile treatment and retaliation to the point that he has experienced severe emotional distress that requires treatment.

## COUNT I
### (Race Discrimination: Hostile Work Environment– R.C. 4112.02)

33. Plaintiff realleges herein each of the allegations contained in the preceding paragraphs of his Complaint as if fully restated herein.

34. Defendant engaged in conduct that violates R.C. 4112 prohibiting race discrimination by creating and allowing a hostile work environment for Plaintiff.

35. Plaintiff is a member of a protected class based on his race (African American).

36. Plaintiff was subject to unwelcome harassment as Defendants employees made racist cartoons, mocked his speech, commented that whites are superior, and directly interfered with Plaintiff's ability to perform his job duties.

37. The harassment was based on Plaintiff's race.

38. The work environment was permeated with intimidation, ridicule, and insult. The harassing conduct was sufficiently severe and pervasive to affect the terms, conditions, and privileges of Plaintiff's employment.

39. Defendant knew or should have known of the harassment yet did not take immediate and corrective action.

40. The hostile environment impacted Plaintiff's employment, requiring him to seek mental health treatment.

41. As a direct and proximate result of Defendant's conduct, Plaintiff suffered emotional distress including shame, humiliation, embarrassment, and mental anguish.

42. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for all legal damages and other relief available under Ohio Revised Code Chapter 4112, including but not limited to punitive damages.

## COUNT II
### (Race Discrimination: Hostile Work Environment– Title VII)

43. Plaintiff realleges herein each of the allegations contained in the preceding paragraphs of his Complaint as if fully restated herein.

44. Defendant engaged in conduct that violates Title VII prohibiting race discrimination by creating and allowing a hostile work environment for Plaintiff.

45. Plaintiff is a member of a protected class based on his race (African American).

46. Plaintiff was subject to unwelcome harassment as Defendants employees made racist cartoons, mocked his speech, commented that whites are superior, and directly interfered with Plaintiff's ability to perform his job duties.

47. The harassment was based on Plaintiff's race.

48. The work environment was permeated with intimidation, ridicule, and insult. The harassing conduct was sufficiently severe and pervasive to affect the terms, conditions, and privileges of Plaintiff's employment.

49. Defendant knew or should have known of the harassment yet did not take immediate and corrective action.

50. The hostile environment impacted Plaintiff's employment, requiring him to seek mental health treatment.

51. As a direct and proximate result of Defendant's conduct, Plaintiff suffered emotional distress including shame, humiliation, embarrassment, and mental anguish.

52. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for all legal damages and other relief available under Title VII of the Civil Rights Act of 1964, including but not limited to punitive damages.

## COUNT III
### (Retaliation – Title VII)

53. Plaintiff reasserts and reincorporates each and every allegation contained in the paragraphs above as if fully rewritten herein.

54. Plaintiff engaged in a protected activity by, *inter alia*, opposing and reporting race discrimination, and reporting concerns of retaliation for opposing race discrimination.

55. Defendant was aware that Plaintiff engaged in a protected activity, as he addressed concerns of race discrimination and retaliation with Defendant's management, human resources, and executives.

56. Once Plaintiff engaged in a protected activity, Defendant intentionally retaliated against him by directly interfering with the terms and conditions of his employment.

57. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to, pain and suffering, lost benefits, and other terms, privileges, and conditions of his employment for which Defendant is liable.

58. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT IV
### (Retaliation – RC 4112)

59. Plaintiff reasserts and reincorporates each and every allegation contained in the paragraphs above as if fully rewritten herein.

60. Plaintiff engaged in a protected activity by, *inter alia*, opposing and reporting race discrimination, and reporting concerns of retaliation for opposing race discrimination.

61. Defendant was aware that Plaintiff engaged in a protected activity, as he addressed concerns of race discrimination and retaliation with Defendant's management, human resources, and executives.

62. Once Plaintiff engaged in a protected activity, Defendant intentionally retaliated against him by directly interfering with the terms and conditions of his employment.

63. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to, pain and suffering, lost benefits, and other terms, privileges, and conditions of his employment for which Defendant is liable.

64. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands back pay and benefits, or front pay and benefits, whichever is appropriate, in an amount to be determined at trial, but in any event not less than $375,000.00, compensatory damages, liquidated damages, punitive damages, emotional distress damages, pre-judgment interest, post-judgment interest, costs, attorneys' fees and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ *Peter G. Friedmann*
Peter G. Friedmann (0089293)
**The Friedmann Firm LLC**
3740 Ridge Mill Drive
Hilliard, Ohio 43026
614-610-9756 (Phone)
614-737-9812 (Fax)

Pete@thefriedmannfirm.com

*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of eight (8) persons to hear all issues so triable.

/s/ *Peter G. Friedmann*
Peter G. Friedmann (0089293)
